UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Case Number: 14-12717-7 |
| ROY E. AHERN, | |
| Debtor. | |
| | |
| OCEAN INNOVATIONS, INC., and JET DOCK SYSTEMS, INC., | |
| Plaintiffs, | Adversary Number: 14-135 |
| v. | |
| ROY E. AHERN, | |
| Defendant. | |

---

**<u>MEMORANDUM DECISION</u>**

For more than a decade, Plaintiffs Ocean Innovations, Inc., f/k/a Jet Dock Licensing Inc. ("Ocean") and Jet Dock Systems, Inc. ("Jet Dock") have been engaged in litigation with Defendant Roy E. Ahern and others related to patent infringement claims. Most recently, Ocean and Jet Dock filed an Adversary Complaint seeking a determination of the dischargeability of a judgment debt owed to them by Ahern.

Now before the Court is the Plaintiffs' Motion for Summary Judgment on the section 523(a)(6) claim. Ahern opposed the motion, contending the issues in the action in the United States District Court for the Northern District of

Ohio were not actually litigated, the Judgment entered by the District Court was a default judgment not entitled to the application of collateral estoppel, and that the findings of the District Court do not satisfy the "willful and malicious" elements of a claim under section 523(a)(6).

For the reasons set forth below, the Court concludes there are no genuine issues of material fact, and that Ocean and Jet Dock are entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056(c). The Court accordingly grants summary judgment to Ocean and Jet Dock on the section 523(a)(6) claim in the complaint.

## JURISDICTION

The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).

## FACTS

Ocean is the owner by assignment of several patents, including five that are the subject of the litigation with Ahern. The five patents relate to a dock system that allows a boat owner to drive a boat or jet ski directly onto a floating dock. Candock, Inc., has manufactured and marketed a similar system in Canada, but did not market that system in the United States prior to 1999.

In August of 1999, Ahern's attorneys told him in a memo there was a risk of infringing certain patents held by Jet Dock if he sold Candock docks in the United States. The attorneys provided a memo containing information for Ahern's discussion with Candock USA and possible questions regarding

whether there might be grounds to argue that at least two of the patents were invalid. The attorneys also told Ahern that Ocean and Jet Dock had vigorously pursued protection of their patents. Nevertheless, Ahern and others then began selling drive-on docks in the United States sometime after 1999.

In 2000, the attorneys for Ocean and Jet Dock sent correspondence to Candock USA advising of the infringement. The attorneys for Candock USA responded, asserting they could argue that most if not all of the claims of two of the patents at issue were invalid. The parties exchanged further correspondence in 2001, including copies of letters received by Ahern and Chuck Malkerson of Candock USA.

In 2003, Ocean and Jet Dock commenced a patent infringement suit against Ahern and others in the United States District Court for the Northern District of Ohio ("Patent Litigation"). Ahern and his co-defendants filed motions to dismiss the Patent Litigation. Those motions were denied. Ocean and Jet Dock then filed a motion for partial summary judgment seeking a ruling on the validity of the patents as a matter of law. Ahern contested that motion and filed his own cross-motion for summary judgment on the issue of patent validity, seeking a ruling the patents were invalid as a matter of law.

The District Court granted the Ocean/Jet Dock motion, declaring the plaintiffs were entitled to judgment as a matter of law that the patents were valid. The District Court denied Ahern's cross-motion on the grounds there was no genuine issue of material fact and that the defendants (including Ahern)

could not carry their burden of proof to establish that certain of the claims under the two patents were invalid.

The plaintiffs filed a Second Amended and Supplemental Complaint in November 2008. Ahern and certain other defendants moved for leave to move or plead to the Amended Complaint. The Court granted leave to move or plead to the complaint until December 29, 2008.

In December 2008, Ocean and Jet Dock filed a motion for partial summary judgment on the issue of patent infringement. This motion sought a ruling that the defendants infringed the patents as a matter of law.  Ahern again vigorously opposed the plaintiffs' motion. Not only did he file opposition to this motion, he filed a cross-motion for summary judgment seeking a ruling that the defendants were not infringing plaintiffs' patents as a matter of law.

Ahern and the other moving defendants did not file an answer. They did file a motion to dismiss. In March 2009, the court granted this motion in part and denied the balance of the motion.  Specifically, the court granted the motion as to the plaintiffs' claims against defendant Lott, and those claims were severed and dismissed without prejudice. Otherwise, the motion was denied. Still, Ahern did not file an answer.

The District Court issued a Memorandum of Opinion and Order in June 2009 stating, in part, "ERA Marine and George Dabrowski are the only defendants that have filed answers in the case at bar. None of the defendants to date have plead to the Second Amended and Supplemental Complaint."

4

In September 2009, the District Court issued an Order granting plaintiffs' motion and denying defendants' motion on the issue of infringement. The District Court determined there were no genuine issues of material fact and the defendants, including Ahern, infringed claims 1 and 15 of one of the patents and claim 28 of another of the patents.

At some point after October 19, 2009, Ahern and others filed an "unopposed" motion for leave to answer. The District Court held a hearing and denied this motion on November 30, 2009. The clerk of the District Court entered the default of Ahern and the other non-answering defendants on December 11, 2009.

Ahern then sought an order vacating the clerk's entry of default. The motion argued, among other grounds, that default was "improper" because (other than failing to file an answer) the defendants had defended. That motion was denied.

Ocean and Jet Dock then filed a motion for judgment and permanent injunction. The parties had previously stipulated to sales volume. Ahern opposed this motion as well. On May 14, 2010, the motion for judgment and permanent injunction was granted. On July 12, 2011, the District Court entered a Judgment awarding damages on the infringement claim, including treble damages. Ahern appealed this Judgment to the Federal Circuit. The Federal Circuit affirmed the Opinion and Judgment on October 10, 2012.

5

## ANALYSIS

As discussed, Ocean and Jet Dock have moved for summary judgment on the dischargeability of Ahern's debt under section 523(a)(6). Ahern opposes summary judgment. His principal contentions are that (1) he did not have the "opportunity to litigate . . . his affirmative defenses and counterclaims for . . . invalidity, non-infringement and unenforceability . . . ."; (2) a default judgment is not a proper basis for collateral estoppel; and (3) the District Court findings do not satisfy the requirement of willful and malicious injury under section 523(a)(6).

On a motion for summary judgment, the only task of the court is to determine "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (applied through Fed. R. Bankr. P. 7056(a)). The court must view all facts and indulge all inferences in the light most favorable to the defendant and determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

As a procedural matter, on summary judgment "the burden is on the moving party to establish that there is no genuine issue about any material fact, or that there is an absence of evidence to support the nonmoving party's case, and that the moving party is entitled to judgment as a matter of law." 20 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 105 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d

265 (1986)). If there is no genuine issue of material fact for trial, the sole question is whether the movant is entitled to summary judgment as a matter of law. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### A. Collateral Estoppel/Issue Preclusion

Preclusion is an equitable doctrine that exists, in main, to aid courts in "fulfilling the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982). For federal preclusion to apply, it must be shown that the party against whom preclusion is sought was afforded an opportunity for a full and fair hearing. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 333, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).

Under the doctrine of claim preclusion, formerly known as res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Highway J Citizens Grp. v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)). The doctrine protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). It also reflects the fundamental policy "that there be an end to litigation," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401–02,

7

101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) (internal quotation omitted), a policy that is "particularly strong in the bankruptcy context," *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994).

Claim preclusion under federal law is often described as consisting of three elements: (1) an identity of the parties or their privies, (2) an identity of the causes of action, and (3) a final judgment on the merits. *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011); *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009); *Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007); *Highway J Citizens Grp.*, 456 F.3d at 741; *Maher v. F.D.I.C.*, 441 F.3d 522, 526 (7th Cir. 2006). While claim preclusion applies only to issues that have been necessarily and unambiguously decided, express factual findings are not required because an issue may be decided from findings implicit in the judgment. *See Leventhal v. Schenberg (In re Leventhal)*, 481 B.R. 409 (N.D. Ill. 2012).

Collateral estoppel or issue preclusion, on the other hand, generally refers to the effect of a prior judgment in limiting or precluding relitigation of issues that were actually litigated in the previous action, regardless of whether the previous action was based on the same cause of action as the second suit. The doctrine of collateral estoppel precludes a party from relitigating an issue already decided in a prior proceeding. It applies in nondischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *see also Adams v. Adams*, 738 F.3d 861, 865 (7th Cir. 2013).

Issue preclusion applies if (1) the issue sought to be precluded is the same as that involved in a prior action, (2) the issue was actually litigated, (3) the determination was essential to the final judgment, and (4) the party against whom preclusion is invoked was represented in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000).

The arguments presented by the parties on summary judgment discuss preclusion using elements of both issue preclusion and claim preclusion. There is similarity in some of the factors. For example, claim preclusion requires a final judgment on the merits. Issue preclusion presupposes a final judgment in the context of the requirement that the determination was essential to a final judgment. Because claim preclusion does not apply in bankruptcy discharge exception proceedings, *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994), the analysis must focus on issue preclusion. The Court concludes that issue preclusion applies and each element has been satisfied.

### 1. Identity of Parties, Final Judgment, and Actual Litigation

First, there is an identity of the parties. Both the Plaintiffs and Ahern were parties to the Patent Litigation. Ocean and Jet Dock were plaintiffs; Ahern was one of the defendants. Ocean and Jet Dock are the Plaintiffs in this adversary proceeding and Ahern is the Defendant.

Ahern argues that at least some of the positions he took or arguments he made in the Patent Litigation were advanced in his capacity as an officer of one of the corporate defendants and not in his individual capacity. The positions identified relate to affidavits Ahern signed. While he may have identified his

corporate capacity in those pleadings, he individually signed the affidavits under penalty of perjury, asserting the information was within his personal knowledge. Ahern does not deny he was a party in the Patent Litigation and is a party in this adversary proceeding. He filed numerous motions and pleadings in the Patent Litigation, including motions to dismiss, motions for summary judgment, motions for vacation of default, and opposition to motions of the plaintiffs. While Ahern may have submitted supporting affidavits on behalf of the corporation, they also supported the positions Ahern took. The positions taken and arguments advanced by Ahern on behalf of a corporate entity in the Patent Litigation were advanced as much for Ahern as a party as they were for any entity or other defendant in the Patent Litigation, and he is certainly a party in this adversary proceeding.

Ahern does not deny that the District Court entered a final judgment and the Federal Circuit affirmed it on appeal. "Finality" generally means finality for purposes of appellate review. *Ross*, 486 F.3d at 284 (noting that a "final judgment for purposes of 28 U.S.C. § 1291" is "normally enough to assure finality for preclusion purposes also"); see also 18A Wright & Miller, *supra* § 4434 at 128. Reduced to its essence, finality for appeal depends simply on "whether the district court has finished with the case." *Czarniecki*, 633 F.3d at 549 (quoting *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008) (internal quotation omitted)). There is no doubt that the District Court finished with the Patent Litigation case. It entered a Judgment. The Judgment was appealed and affirmed.

Ahern argues that the Judgment should not be considered final for the purposes of preclusion because the judgment was a default. He points to the general rule disfavoring application of collateral estoppel in instances of default judgments. *See In re Catt*, 368 F.3d 789, 792 (7th Cir. 2004).

The Judgment in the Patent Litigation was not an ordinary default judgment. It was the culmination of more than seven years of litigation. Ahern actively participated in the litigation over that period of time. He was represented by counsel. He opposed numerous motions filed by the plaintiffs. He filed cross-motions seeking dismissal, declaration of invalidity of patents and opposing a permanent injunction. While some of his co-defendants did file answers, he did not do so. The District Court carefully considered Ahern's argument that the default should be vacated and whether there was any basis to grant relief based on excusable neglect. The court concluded that "it is not reasonable for the defendants to have been mistaken regarding when their answer was required to be filed . . . the Court granted the defendants leave until December 28, 2008, within which to move or plead . . . and, in any event, their answer should have been filed no later than April 14, 2009." (Dkt. 1-1, p. 27). Ahern was clearly afforded a reasonable opportunity to defend himself on the merits. *F.D.I.C. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995). He took full advantage of those opportunities despite his failure to file an answer.

This is not a case where a defendant merely decided the burden of litigation outweighed the advantage of opposing a claim and failed to appear. *In re Daily*, 47 F.3d at 367. To the contrary, Ahern actively and vigorously

11

participated in and defended the litigation for seven years or more before the District Court entered the Judgment against him. Ultimately, Ahern simply elected not to file an answer. While resolution did not occur following a trial, factual issues were determined through appropriate motion practice. In such a case, there was "actual litigation" sufficient to satisfy any requirement for preclusion. To hold otherwise would permit debtors to delay substantially and perhaps ultimately avoid paying debts by deliberate abuse of or delay in the judicial process. *Id.*

### 2. Representation in Prior Action

Ahern was represented by counsel in the Patent Litigation. He appeared and defended.

### 3. Identity of Issues

The Judgment and related Memorandum of Opinion and Order establish first that the patents at issue were valid and there was no viable challenge to validity; second, that Ahern infringed the patents and induced others to do so; and third, that Ahern "acted with full knowledge of the existence of the Jet Dock Patents and the rights of the plaintiffs and with notice to refrain from infringing the plaintiffs' patents and so acted willfully and deliberately to infringe the Jet Dock Patents." (Dkt. 1-1, p. 29) The amount of lost profits was stipulated, thus establishing the amount of damages. The District Court then considered whether enhanced damages were appropriate.[1] Concluding that the infringers, including Ahern, acted despite an objectively high likelihood that

---

1 In addition to actual damages, the plaintiffs sought treble or enhanced damages pursuant to 35 U.S.C. § 284.

their actions constituted infringement of a valid patent and that they acted willfully and deliberately, the District Court awarded treble damages.

The Plaintiffs seek to preclude relitigation of the circumstances of Ahern's patent infringement and whether the patents were valid. The validity of the patents was unequivocally litigated in the Patent Litigation. Similarly, the willful nature of the infringement and damages were essential to the Patent Litigation Judgment.

The issues determined in the Patent Litigation were essential to the final judgment in that case. Thus, the remaining question is whether the essential issues determined in the Patent Litigation satisfy the elements for a claim of nondischargeability under section 523(a)(6).

### B. Application to a 523(a)(6) Claim

The patent cases following *In re Seagate,* 497 F.3d 1360 (Fed. Cir. 2007), make it very clear that the first part of the willful infringement test – whether the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent – is an objective standard, not a subjective one. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1005-06 (Fed. Cir. 2012) (explaining that *Seagate* established the new test, and the first prong was an objective one); *In re Seagate Tech.*, 497 F.3d 1360, 1371 ("The state of mind of the accused infringer is not relevant to this objective inquiry.").

The willful standard under section 523(a)(6), however, can also have a subjective component. "Willfulness" can be found either if the "debtor's motive

13

was to inflict the injury, or the debtor's act was substantially certain to result in injury." *First Weber Grp., Inc. v. Horsfall,* 738 F.3d 767, 774 (7th Cir. 2013). The debtor's motive under section 523(a)(6) is a subjective determination. Whether the debtor's act was substantially certain to result in injury, however, could also be construed as an objective determination.

> The test for willful infringement of a patent is as follows.
>
> Establishing willful infringement of a valid patent requires satisfying a two-pronged test. First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc) (citing *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 127 S. Ct. 2201, 2215, 167 L. Ed. 2d 1045 (2007)). This first prong is a question of law. *Bard,* 682 F.3d at 1007. "The state of mind of the accused infringer is not relevant to this objective inquiry." *Seagate,* 497 F.3d at 1371. Second, if the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* This subjective prong is only submitted to a jury if the patentee can first satisfy the initial objective prong.

*Dane Techs., Inc. v. Gatekeeper Sys., Inc.,* 2015 WL 5719142, at *13 (D. Minn. 2015).

Ocean and Jet Dock have asserted the indebtedness arising out of the District Court Judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by a debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). To prevail on such a claim, the plaintiff must prove three elements: (1) the debtor owes a debt resulting from an injury he caused to another, (2) his

14

actions in causing the injury were willful, and (3) his actions in causing the injury were malicious. *James Cape & Sons Co. v. Bowles (In re Bowles)*, 318 B.R. 129, 146 (Bankr. E.D. Wis. 2004); *Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004). "Injury," as used in the statute, "is understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). It is undisputed that Ocean and Jet Dock sustained an injury.

The formulation and application of a precise definition of "willful and malicious" has been a struggle for the courts. *Merritt v. Rizzo (In re Rizzo)*, 337 B.R. 180, 188 (Bankr. N.D. Ill. 2006). The Supreme Court has held the section 523(a)(6) standard does not include "debts arising from recklessly or negligently inflicted injuries." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S. Ct. 974, 978, 140 L. Ed. 2d 90 (1998). "[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523 U.S. at 61-62.

Generally, a willful and malicious injury "is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012). "'Willfulness' can be found either if the

15

debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Horsfall*, 738 F.3d at 774.

As for malice, the Code requires "that the debtor acted 'in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.'" *Id.* (quoting *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994)). Malice means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Rigoni Di Asiago S.P.A. v. Mucci (In re Mucci)*, 458 B.R. 802, 810 (Bankr. D. Conn. 2011). "A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008).

In this case, the Judgment establishes that Ahern acted willfully to infringe on the Plaintiffs' patents. The Judgment states Ahern infringed the patents "with full knowledge of the existence of the Jet Dock Patents and the rights of the plaintiffs and with notice to refrain from infringing the plaintiffs' patents." (Dkt. 1-1, p. 29) Even if the Defendant did not act intending to injure the Plaintiffs, based upon his knowledge of the patents and notice to refrain from infringement, he must have been substantially certain that selling his units would invade the legal right of another, thereby causing an injury. Therefore, the willfulness component of section 523(a)(6) is satisfied.

Ahern was aware of the rights of Ocean and Jet Dock. He was cognizant of the fact the Plaintiffs had vigorously defended their patents in the past, seeking both injunctive relief and damages. Ahern had been warned of the

16

infringement and yet acted willfully and deliberately to sell, continue to sell, and induce others to sell infringing products. It is implicit in the District Court Judgment "that the debtor acted 'in conscious disregard of [his] duties or without just cause or excuse.'" Ahern's acts were undeniably intentional. It is also clear that injury would result from those acts.

Other courts have found that a bankruptcy court may infer a finding of malice from a non-bankruptcy court's prior findings of fact. *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 807 (Bankr. E.D.N.Y. 2014). To find malice in a collateral estoppel proceeding, "the non-bankruptcy court need not have made a finding of malice *per se*. Rather, the bankruptcy court can infer from the prior factual findings whether a debtor's pre-bankruptcy conduct was 'malicious' sufficient to satisfy Section 523(a)(6)." *Id.* (quoting *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 42 (Bankr. E.D.N.Y. 2011). In *Birnbaum*, the court found that based upon the prior court's findings that the debtor disregarded orders and "intentionally and willfully" used another's trademarks, the debtor acted maliciously within section 523(a)(6). *Id.*

Another court has found that infringement is an inherently harmful activity. *See In re Mucci*, 458 B.R. at 812-13 (holding that a trademark infringement judgment constituted willful and malicious injury under section 523(a)(6)). The *Mucci* court found that infringement, unlike a medical malpractice action such as in *Geiger*, is a "categorically harmful activity." *Id.* The intent to infringe and the intent to deprive the owner of the benefit of his

17

property are "opposite sides of the same coin." *Id.* The court found that "when someone intentionally infringes on the copyright or trademark of another, they subjectively desire to harm property belonging to the mark's owner." *Id.*

Here, the Judgment establishes that the Defendant acted intentionally and willfully to infringe on the Plaintiffs' patents. The Judgment states that the Defendant infringed the patents "with full knowledge of the existence of the Jet Dock Patents and the rights of the plaintiffs and with notice to refrain from infringing the plaintiffs' patents." (Dkt. 1-1, p. 29) The infringement necessarily deprived the Plaintiffs of property. Even if Ahern did not act intending to injure the Plaintiffs, based upon his knowledge of the patents and notice to refrain from infringement, he must have been substantially certain that selling his units would invade the legal right of Ocean and Jet Dock, thereby causing an injury. The infringement of a patent is every bit as much inherently harmful as infringement of a trademark. Ahern had repeated notice that his actions may infringe on the rights of Ocean and Jet Dock. Nonetheless, he consciously disregarded his duty to refrain from infringement. Ahern took no remedial action and chose to sell infringing products. His sales were significant in amount and over more than a brief period of time.

Ahern's actions were intentional and deliberate wrongful acts, done without just cause or excuse. Those actions produced injury and harm to Ocean and Jet Dock. The harm was the clearly foreseeable consequence of his actions. His actions were malicious and within the meaning of section 523(a)(6). There is an identity of issues between the Patent Litigation and the

18

issues in this adversary proceeding. The findings in the Patent Litigation are sufficient to establish that Ahern's acts resulted in willful and malicious injury to the Plaintiffs. Thus, the final element for preclusion – identity of issues – is also satisfied.

## CONCLUSION

Ocean Innovations, Inc., and Jet Dock, Inc., are awarded summary judgment against Ahern. The dischargeability of the obligation of Defendant Roy E. Ahern to the Plaintiffs will be denied pursuant to 11 U.S.C. § 523(a)(6).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: November 19, 2015.

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge